FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 26, 2019

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA H., | NO: 4:18-CV-5118-RMP |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are cross-motions for summary judgment from Plaintiff Barbara H.,[1] ECF No. 11, and the Commissioner of Social Security (the "Commissioner"), ECF No. 12. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claim for supplemental security income under Title XVI of the Social Security Act (the "Act"). The Court has considered the parties' briefings and the administrative record, and is fully

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

informed.  For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 11, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 12.

## BACKGROUND

### A. Plaintiff's Claim for Benefits and Procedural History

Plaintiff protectively filed an application for supplemental security income on May 17, 2013.  Administrative Record ("AR") 245–54.[2]  Plaintiff alleged that her onset date was December 5, 2011, but later amended the alleged onset date to March 15, 2013.  AR 18, 57–59.  Plaintiff was 39 years old at the time of her alleged onset date and 41 years old on her amended alleged onset date.  She has an Associate of Science degree in Graphic Technology.  AR 59.  The Commissioner initially denied Plaintiff's application for supplemental security income and denied Plaintiff's application upon reconsideration.  AR 130–33, 138–40.  Plaintiff timely requested a hearing.  AR 141–43.

### B. December 8, 2015 Hearing

A video hearing took place before Administrative Law Judge ("ALJ") Elizabeth Watson on December 8, 2015.  AR 44–53.  The ALJ informed the Plaintiff of the right to representation, and Plaintiff requested a continuance to obtain

---

[2] The AR is filed at ECF No. 9.

representation. The ALJ granted Plaintiff's request and continued the hearing.  AR 49–52.

### C. October 7, 2016 Hearing

A second video hearing took place before Judge Watson on October 7, 2016, with Plaintiff represented by attorney Chad Hatfield.  AR 54–87.  Plaintiff responded to questions from her attorney and Judge Watson.  AR 59–76.  A vocational expert, Mark McGowan, also appeared at the hearing.  AR 77–82.

### D. March 16, 2017 Hearing

A supplemental video hearing took place before Judge Watson on March 16, 2017, with Plaintiff again represented by attorney Chad Hatfield.  AR 88–103. Plaintiff responded to questions from her attorney and Judge Watson.  AR 93–99.  A vocational expert, Frank Lucas, also appeared at the hearing.  AR 99–102.

### E. ALJ's Decision

On March 28, 2017, the ALJ issued an unfavorable decision for Plaintiff.  AR 15–33.  Utilizing the five-step evaluation process, Judge Watson found:

**Step one:** Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of March 15, 2013.  AR 20.

**Step two:** Plaintiff has the following severe impairments: cervical degenerative disc disease Bartolotti's syndrome and lumbar degenerative disc disease, status post fusion; migraines; chronic depression; dysthymic disorder;

panic disorder without agoraphobia; right carpal tunnel syndrome, status post

release; and obesity. AR 20.

**Step three:** Plaintiff does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in

20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff had

the RFC to

> perform a reduced range of light work. She can lift and/or carry
> 20 pounds occasionally and 10 pounds frequently. She can stand
> and/or walk each for about two hours in an eight-hour workday
> with normal breaks, and she can sit for about six hours in an
> eight-hour workday with normal breaks. She requires the use of
> a cane to ambulate, and she must avoid uneven terrain. The
> claimant is limited to no more than frequent bilateral foot control
> operation. The claimant is limited to no more than occasional
> climbing of ramps or stairs and no climbing of ladders, ropes, or
> scaffolds. She is limited to no balancing and no more than
> occasional stooping, kneeling, crouching, and crawling. The
> claimant must avoid all unprotected heights and all excessive
> vibration. The claimant can understand and carry out simple
> instructions. She is limited to no more than occasional,
> superficial contact with coworkers and supervisors.

AR 23–24.

**Step four:** Plaintiff is incapable of performing past relevant work. AR 32

(citing 20 C.F.R. § 416.965). Plaintiff's past relevant work includes a day

care worker. *Id.*

**Step five:** Considering Plaintiff's age, education, work experience, and RFC,

Plaintiff can work jobs that exist in significant numbers in the national

economy.  AR 32.  Specifically, the ALJ found that Plaintiff can work as a marketing clerk, garment sorter, and routing clerk.  AR 33.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 13, 2018.  AR 1–4. Plaintiff now seeks judicial review.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir.

1965).  On review, the district court considers the record as a whole, not just the

evidence supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877

F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir.

1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in

evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

interpretation, the court may not substitute its judgment for that of the

Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v.

Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by

substantial evidence will still be set aside if the proper legal standards were not

applied in weighing the evidence and making a decision.  *Brawner v. Sec'y of Health

& Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).  Thus, if there is substantial

evidence to support the administrative findings, or if there is conflicting evidence

that will support a finding of either disability or nondisability, the finding of the

Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir.

1987).

**B. Definition of Disability**

The Social Security Act defines "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### C. Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. At step one, the decision maker determines if the claimant is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, in which the decision maker compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude any

gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, in which the decision maker determines whether the impairment prevents the claimant from performing work that she has performed in the past.  If the plaintiff is able to perform her previous work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process is to determine whether the claimant is able to perform other work in the national economy considering her RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  *Meanel*, 172 F.3d at 1113.  The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs

exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

I.   **Did the ALJ err by affording less weight to the opinions of Barbara's treating physicians?**

II.   **Did the ALJ err by finding that Barbara's impairments do not meet or equal a Listing at step three?**

III.   **Did the ALJ err by affording little weight to the lay witness testimony?**

IV.   **Did the ALJ err in her assessment of Barbara's subjective complaints?**

V.   **Did the ALJ meet her burden at step five?**

## DISCUSSION

### A.   Medical Opinion Evidence

Plaintiff contends that the ALJ improperly rejected the opinions of her treating medical providers, Albert Randolph, M.D., and Jason Dreyer, D.O.  ECF No. 11 at 10–11.  The Commissioner argues that the ALJ appropriately weighed and evaluated the opinions of Dr. Randolph and Dr. Dreyer.  ECF No. 12 at 3.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities in the record.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ's findings "must be supported by

specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Social Security regulations provide that for claims filed before March 27, 2017, more weight is given to a treating physician's opinion than to the opinion of a physician who does not treat the claimant.[3] *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating doctor is given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2) (rescinded effective March 27, 2017). "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017); *see also* 20 C.F.R. § 416.927 (c)(2)–(6).

If the ALJ finds that the opinion of a treating physician is not contradicted, the physician's opinion can only be rejected with clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th

---

[3] For claims filed on or after March 27, 2017, the Commissioner no longer defers or gives any specific evidentiary weight to any medical opinions. 82 Fed. Reg. 5852–53.

Cir. 2005).  If a physician's opinion is contradicted, the ALJ can reject that opinion

with specific and legitimate reasons that are based on substantial evidence in the

record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  "An ALJ can

satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough

summary of the facts and conflicting clinical evidence, stating [her] interpretation

thereof, and making findings.'"  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir.

2014) (quoting *Reddick*, 157 F.3d at 725).

An ALJ may reject medical opinions that are internally inconsistent.  *Van*

*Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996); *see also Bayliss*, 427 F.3d at

1216.  The ALJ need not accept the opinion of a treating physician that is

conclusory, brief, and unsupported by the record as a whole or by objective medical

findings.  *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir.

2004).  However, "[w]here an ALJ does not explicitly reject a medical opinion or set

forth specific, legitimate reasons for crediting one medical opinion over another,

[she] errs."  *Garrison*, 759 F.3d at 1012.  Thus, "an ALJ errs when [she] rejects a

medical opinion or assigns it little weight while doing nothing more than ignoring it,

asserting without explanation that another medical opinion is more persuasive, or

criticizing it with boilerplate language that fails to offer a substantive basis for [her]

conclusion."  *Id.* at 1012–13.  Where an ALJ "fails to provide adequate reasons for

rejecting the opinion of a treating or examining physician," that opinion is credited

"as a matter of law."  *Lester*, 81 F.3d at 834.

### 1. Dr. Albert Randolph's 2013 Opinions

Plaintiff first argues that the ALJ inappropriately rejected Dr. Albert Randolph's March 2013 and September 2013 opinions. ECF No. 11 at 11. Dr. Randolph is one of Plaintiff's treating physicians. The ALJ afforded Dr. Randolph's 2013 opinions little weight. AR 28.

Dr. Randolph examined Plaintiff and completed a Department of Social and Health Services ("DSHS") Physical Functional Evaluation form in March of 2013. AR 353–59. Dr. Randolph diagnosed Plaintiff with headaches, TMJ syndrome, posttraumatic myofascial syndrome, depression, and anxiety. AR 354, 358. Dr. Randolph assessed three moderate limitations and one moderate-to-marked limitation in Plaintiff's ability to complete basic work activities. AR 354. Dr. Randolph further assessed that Plaintiff can perform sedentary work in a regular predictable manner despite her impairments. AR 355.

Dr. Randolph examined Plaintiff and completed a second DSHS Physical Functional Evaluation form in September 2013. AR 508–10, 553–55. Dr. Randolph diagnosed Plaintiff with lumbosacral back discomfort with findings of Bertolotti syndrome and arthralgia in her hands. AR 509, 554. Dr. Randolph assessed two marked limitations in Plaintiff's ability to complete basic work activities. AR 554. Dr. Randolph further found that Plaintiff is "at least restricted to sedentary work or severely limited by [her diagnoses] with marked interference of ability to perform work tasks." AR 510, 555.

The ALJ gave little weight to Dr. Randolph's 2013 opinions because "his limitation to sedentary work is internally inconsistent with his assertion that the claimant had marked limitation in performing any work tasks." AR 28. The ALJ further explained that "such limitations are inconsistent with the record as a whole, including the objective findings of the in-person examination, the claimant's longitudinal treatment records, her activities of daily living, and her ongoing work activity." *Id.*

The ALJ's outright rejection of Dr. Randolph's 2013 opinions was legally erroneous. First, the ALJ failed to determine whether Dr. Randolph's opinions are entitled to controlling weight. *See* AR 27–28. If his opinions are not entitled to controlling weight, the ALJ erred by failing to apply the appropriate factors in determining the extent to which the opinions should be credited. Such factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record. *See* 20 C.F.R. § 416. 927(c)(2)–(6).

Second, an ALJ may reject medical opinions that are internally inconsistent. *See Van Nguyen*, 100 F.3d at 1464. A discrepancy between a provider's notes and observations and the provider's functional assessment is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216. Here, the ALJ only provides a conclusory statement that Dr. Randolph's "limitation to sedentary work is internally inconsistent with his assertion that the claimant had

marked limitation in performing any work tasks." AR 28. The ALJ fails to provide

any analysis as to why a limitation to sedentary work ("Able to life 10 pounds

maximum and frequently [] lift or carry lightweight articles. Able to walk or stand

only for brief periods.") is inconsistent with a finding of marked severity ("Very

significant interference with the ability to perform one or more basic work-related

activities."). AR 554–55. Further, the ALJ does not identify any discrepancy

between Dr. Randolph's notes and observations and his functional assessments. *See*

AR 27–28. Thus, the ALJ did not sufficiently explain how Dr. Randolph's March or

September 2013 opinions are internally inconsistent.

Finally, the ALJ did not expressly find that Dr. Randolph's 2013 opinions

were contradicted by any of the other physicians. *See* AR 27–28. Nevertheless, the

ALJ failed to offer clear and convincing or specific and legitimate reasons for

rejecting Dr. Randolph's opinions. The ALJ's determination that Dr. Randolph's

opinions were contradicted by "the objective findings of the in-person examination,

the claimant's longitudinal treatment records, her activities of daily living, and her

ongoing work activity" are conclusory. AR 27–28. The ALJ's reasoning is far from

meeting the substantial evidence requirement which can be done by "setting out a

detailed and thorough summary of the facts and conflicting clinical evidence, stating

[her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. The

ALJ failed to specifically cite any conflicting clinical evidence or any other place in

the record that contradicted Dr. Randolph's 2013 opinions.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

The Court finds that the ALJ improperly afforded Dr. Randolph's 2013 opinions little weight because the finding was based on legal error and not supported by substantial evidence.

### 2. Dr. Albert Randolph's 2016 Opinion

Plaintiff argues that the ALJ inappropriately rejected Dr. Randolph's September 2016 opinion. ECF No. 11 at 12–13. The ALJ afforded Dr. Randolph's 2016 opinion little weight. AR 29.

Dr. Randolph examined Plaintiff and completed an Attorney Interrogatory form in September 2016. AR 835–36, 856–58. Notably, Dr. Randolph diagnosed Plaintiff with Bertolotti's syndrome, lumbar disc disease, degenerative joint disease, left leg paresthesia, and left leg arthralgia. *Id.* Dr. Randolph noted that, "[Plaintiff] tries to work from home with computer but can only work about hour to hour half [sic] the time and must lay down up to several times a day thinning [sic] of the situation." AR 859. Dr. Randolph also assessed that Plaintiff would miss on average four or more days per month due to medical impairments. AR 836.

The ALJ gave little weight to Dr. Randolph's 2016 opinion because "it is inconsistent with the record as a whole, including the objective medical findings, the claimant's activities of daily living, and her work activity after the alleged onset date." AR 29. The ALJ noted that Plaintiff testified that she was working during the 2016 hearing. *Id.*

1    The ALJ failed to explain her findings, as required by law, before rejecting the

2    2016 opinion of Dr. Randolph.  As with Dr. Randolph's 2013 opinions, the ALJ

3    failed to determine whether the 2016 opinion of Dr. Randolph is entitled to

4    controlling weight.  *See* AR 29.  If the opinion is not entitled to controlling weight,

5    the ALJ erred by failing to apply the appropriate factors in determining the extent to

6    which the 2016 opinion should be credited.  *See* 20 C.F.R. § 416. 927(c)(2)–(6).

7    The ALJ failed to consider factors such as the length of the treatment relationship,

8    the frequency of examination, the nature and extent of the treatment relationship, the

9    amount of relevant evidence that supports the opinion, and the quality of the

10   explanation provided.  *See id.*

11       Next, the ALJ erred when she did not explicitly reject Dr. Randolph's 2016

12   opinion with specific and legitimate reasons or by crediting other providers over Dr.

13   Randolph.  *See* AR 29; *Garrison*, 759 F.3d at 1012.  The ALJ's conclusory

14   determination that Dr. Randolph's opinion was inconsistent with "the record as a

15   whole, including the objective medical findings, the claimant's activities of daily

16   living, and her work activity after the alleged onset date" is insufficient.  AR 29.

17   The ALJ fails to explain the decision to afford Dr. Randolph's 2016 opinion little

18   weight beyond this single sentence.  *Id.*  The ALJ fails to meet the substantial

19   evidence requirement because she assigned Dr. Randolph's 2016 opinion little

20   weight while doing nothing more than "asserting without explanation that another

21   medical opinion is more persuasive" and "criticiz[ed] it with boilerplate language

that fails to offer a substantive basis for [her] conclusion." *Garrison*, 759 F.3d at 1012.

For these reasons, the Court finds that the ALJ improperly afforded Dr. Randolph's 2016 opinion little weight because the finding was based on legal error and not supported by substantial evidence.

### 3. *Dr. Jason Dreyer's 2016 Opinion*

Plaintiff argues that the ALJ inappropriately rejected the 2016 opinion of her treating physician, Dr. Dreyer. ECF No. 11 at 15. The ALJ afforded Dr. Dreyer's opinion some weight because "it is internally inconsistent, and the limitation of lifting 15 pounds was of limited duration." AR 28.

Dr. Dreyer examined Plaintiff and completed a DSHS Physical Functional Evaluation form in January 2016. AR 733–35. Dr. Dreyer diagnosed Plaintiff with neural foraminal stenosis of lumbar spine, spondylosis of lumbar region, spondylosis, and s/p ("status post") lumbar spinal fusion. AR 823. Dr. Dreyer assessed that these diagnoses had a marked limitation on Plaintiff's ability to sit, stand, walk, lift, carry, push, pull, reach, stoop, and crouch. *Id.* Dr. Dreyer noted that Plaintiff could not lift over fifteen pounds and that she could not bend or twist at the waist. Dr. Dreyer further assessed that Plaintiff would be capable of performing sedentary work. AR 823–24. Dr. Dreyer was unable to estimate how long the limitations on Plaintiff's work activities would persist without further evaluation. AR 824.

An ALJ may reject medical opinions that are internally inconsistent. *See Van Nguyen*, 100 F.3d at 1464. However, the ALJ erred by finding Dr. Dreyer's opinion was internally inconsistent. Dr. Dreyer assessed that Plaintiff could never lift over fifteen pounds. AR 823. Thus, in the check-box portion of the DSHS Functional Evaluation, Dr. Dreyer assessed Plaintiff would be capable of sedentary work. AR 824. Notably, there is no work level that corresponds exactly with a lifting limitation of fifteen pounds. *See* AR 824 (sedentary work is defined as "[a]ble to lift 10 pounds maximum and frequently lift or carry lightweight articles" and light work is defined as "[a]ble to lift 20 pounds maximum and frequently lift or carry up to 10 pounds"). The check-box for sedentary work most closely fits Plaintiff's lifting and carrying limitation without exceeding her ability to lift a maximum of fifteen pounds. In other words, Dr. Dreyer's assessment of "sedentary work," with a limitation of lifting ten pounds, is not internally inconsistent with Dr. Dreyer's assessment that Plaintiff could not lift over fifteen pounds.

The ALJ summarily states, "the record as a whole supports a finding that the claimant could lift and carry up to 20 pounds occasionally and 10 pounds frequently with some additional limitations." AR 29. However, the ALJ failed to provide adequate explanations to make this finding despite Dr. Dreyer's finding that Plaintiff could not lift more than fifteen pounds, AR 823, and Dr. Randolph's findings that Plaintiff could not lift more than ten pounds, AR 355, 555.

Additionally, the ALJ incorrectly notes that Dr. Dreyer opined that Plaintiff "could perform light exertion activity within a year . . . ." AR 28. However, Dr. Dreyer does not proffer this opinion. This opinion was asserted by a DSHS Assigned Contractor, Trula Thompson, M.D., who reviewed Dr. Dreyer's 2016 opinion. AR 837–38. Dr. Dreyer opined the estimated duration that Plaintiff would be limited to performing sedentary work is "TBD [to be decided] pending next neurosurgical evaluation." AR 824. Thus, Dr. Dreyer does not make an opinion regarding whether the lifting limitation satisfies the twelve-month durational requirement. 20 C.F.R. § 416.909.

The ALJ failed to offer clear and convincing or specific and legitimate reasons for rejecting Dr. Dreyer's opinion. The Court finds that the ALJ improperly afforded Dr. Dreyer's 2016 opinion some weight as it was not supported by substantial evidence.

**B. Additional Assignments of Error**

Plaintiff additionally argues that the ALJ improperly rejected lay witness testimony and Plaintiff's symptom claims and failed to conduct proper assessments at steps three and five. ECF No. 11 at 8. Because the analysis of these arguments is dependent on the ALJ's evaluation of medical evidence, which the ALJ is instructed to reconsider on remand, the Court declines to address these challenges here.

///

## C. Remedy

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome." *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595–96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179–80 (9th Cir. 2000).

Although Plaintiff requests a remand with a direction to award benefits, ECF No. 11 at 15, 16, 20, Plaintiff also requests a remand for further administrative proceedings, ECF No. 11 at 21, which the Court finds appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103–04 (9th Cir. 2014) (holding that remand for benefits is not appropriate when further administrative proceedings

would serve a useful purpose). Here, the ALJ improperly considered medical opinion evidence, which calls into question whether the assessed RFC and resulting hypothetical propounded to the vocational expert are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* at 1101. Thus, the Court remands this case for further proceedings.

On remand, the ALJ must reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating all of the relevant limitations assessed in these opinions, including precise citation to substantial evidence in the record to support those reasons. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should also reconsider the credibility analysis and lay witness testimony. Finally, the ALJ should reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, **IT IS SO ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgement, **ECF No. 12**, is **DENIED**.

3.  Judgment shall be entered in favor of Plaintiff.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this

Order, provide copies to counsel, enter judgment as directed, and **CLOSE** this case.

**DATED** April 26, 2019.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge
